
REC'D IN PRO SE OFFICE
APR 1 '24 PM3:26

# UNITED STATES COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **CARA CASTRONUOVA,** | ) | |
| And | ) | |
| **JOHN TABACCO,** | ) | |
| *Plaintiffs,* | ) | |
| | ) | Case No.      24-cv-2428 |
| v. | ) | |
| | ) | **Morrison, J.** |
| **ED COX,** Chairman, New York Republican | ) | **Bloom, M.J.** |
| State Committee | ) | **COMPLAINT** |
| and | ) | |
| **NEW YORK REPUBLICAN STATE** | ) | |
| **COMMITTEE,** | ) | |
| and | ) | |
| **NEW YORK STATE BOARD OF** | ) | |
| **ELECTIONS,** | ) | |
| *Defendants.* | ) | |
| | ) | |

Plaintiffs, acting pro se, hereby file this Complaint and allege as follows:

## STATEMENT OF THE CASE

1.      It's "deja vu all over again." In 1996 and 2000, this Court found that the primary system of the New York Republican State Committee was patently unfair and unconstitutional. *See generally Molinari v. Powers,* 82 F. Supp. 2d 57 (E.D.N.Y. 2000); *Rockefeller v. Powers,* 909 F. Supp. 863 (E.D.N.Y. 1995), *rev'd* 74 F.3d 1367 (2d Cir. 1995) (*Rockefeller I*); *Rockefeller v. Powers,* 917 F. Supp. 155, 164 (E.D.N.Y. 1996), *affd* 78 F.3d 44 (2d Cir. 1996) (*Rockefeller II*). In the last 25 years nothing has changed, so Plaintiffs, an aspiring Republican Senatorial candidate and a Republican voter, are forced to bring this same matter before the Court.

2.      Plaintiffs bring this lawsuit challenging the constitutionality of the ballot access rules for the primary election for United States Senator (the "Primary") that will be held by the New York Republican State Committee (the "NYRSC"), led by Ed Cox, and overseen by the New York State Board of Elections (BOE) on June 25, 2024. The purpose of the Primary is to

select the Republican State Committee's nominee for the 2024 United States Senate election (the "Election") to be held in November.

3. Plaintiffs Cara Castronuova and John Tabacco are both New York residents and registered Republicans.

4. Castronuova is seeking access to the ballot for the Primary.

5. Tabacco is a registered Republican voter who supports Castronuova's candidacy and would choose to vote for her both in the Primary and in the Election if she is on the ballot.

6. On February 22, 2024, Defendant NYRSC, led by its chairman Defendant Ed Cox, chose to support a candidate for the New York State Republican Primary that is not Castronuova.

7. Pursuant to N.Y. Elec. Law § 6-104, the Defendants' chosen candidate has automatic access to the ballot, whereas, pursuant to N.Y. Elec. Law § 6-136, all other aspiring candidates who wish to access the ballot, such as Castronuova, have just 37 days to gather at least 15,000 signatures from registered Republican voters throughout the state. It is common knowledge that a candidate must come up with double the amount of signatures required, as signatures will be contested by the Republican party or their proxies. Therefore, Castronuova must actually gather 30,000 signatures in 37 days. To do this, she must collect over 800 signatures per day. This is unduly burdensome and unrealistic. The deadline to gather the 15,000 signatures is April 4, 2024.

8. During these 37 days, the Defendants' chosen candidate is free to campaign and gather contributions that can be used for the campaign, giving him an unfair advantage. In the last week alone the chosen candidate has spent his time appearing on 770 WABC radio, 710 WOR radio and made multiple appearances on TV promoting his candidacy, while Cara

Castronuova has been walking door to door day and night in an attempt to meet the onerous and previously ruled Unconstitutional Petition Scheme. The chosen candidate is spared the effort and expense of gathering signatures. He is not burdened with the requirement to gather the signatures and does not have to reserve funds to gather signatures and litigate challenges to signatures.

9.     Grassroots candidates like Cara Castronuova must ask the public to contribute to finance her signature gathering efforts, and must reserve funds to litigate the inevitable challenges by Republican Party proxies to the signatures that she gathers.

10.     As set forth below in detail, the 15,000 signature requirement for aspiring Republican Senatorial candidates is insurmountable for anyone who is not a self-funded multi-millionaire or an "atypical" candidate that has name notoriety and hundreds of thousands of dollars to fund the Unconstitutional Petition Scheme. In the past it proved impossible even for billionaire Steve Forbes who failed to meet the requirement after spending over $1,000,000.00, as described in *Molinari v. Powers*, 82 F. Supp. 2d 57 (E.D.N.Y. 2000).

11.     In *Molinari,* this court found "(i) that the New York ballot access scheme as applied to the Primary poses an undue burden in its totality on the right to vote under the First Amendment … and (ii) that two individual but related elements of that scheme are themselves unconstitutional."

12.     The Court based its decision on earlier cases that brought forth claims that were substantially similar against the same defendants. In *Rockefeller II,* this Court found "that the evidence demonstrated that candidates without the support of the Republican State Committee were substantially burdened by the combination of" several factors. Each of those factors are present in this case, in addition to other factors that make Plaintiffs' case even stronger than the case of the plaintiffs in *Molinari.*

13.     The Court found that the numerical requirement of 15,500 signatures for a statewide election required candidates in statewide elections "who do not enjoy the support of the existing Party apparatus to create far-flung organizations that reach to every corner of New York State." This is as true today as it was 25 years ago.

14.     "[T]he requirement (still in effect this year) that the collection of signatures must occur in a period of 37 days from December through early January, during which there are several important holidays, inclement weather,[1] school and family vacations, and short periods of daylight;" is as true today as it was 25 years ago. This year, declared Senate candidate Castronuova (in a scenario that is parallel to that in *Molinari*) has 37 days (February 27 to April 3) to collect a minimum of 15,000 signatures in a minimum of 13 Congressional Districts across New York state. This occurs, possibly by design, during one of the most religious months in the calendar year for a number of faiths. Castronuova has volunteers that are limited in their scope of helpfulness in gathering petitions, due to religious obligation. Castronuova (a devout Christian) along with her Christian supporters observe the religious period of Lent, Good Friday and Easter. Further, many of her Jewish supporters observed Purim this month along with a weekly Sabbath in which they are unable to contribute time to signature gathering. Castronuova's Muslim supporters have observed Ramadan and fasting since March 11th until this moment of the filing. There were several days of severe inclement weather, including torrential downpour throughout the state and snow in upstate areas that made signature gathering more difficult or literally physically impossible. Two weekends (weekends being the most productive days to gather signatures due to events and people being home to answer doors) were rained out in weather storms. The 37 days are further curtailed because of the onerous administrative tasks that must be

---

[1] https://www.cbsnews.com/newyork/news/new-york-city-rain-totals-march-23-2024/.

performed before submitting signatures such as vetting, sorting, and binding. These tasks, as set forth below, can take a dozen volunteers 72 or more hours to accomplish.

15.     Furthermore, the Board of Elections sets forth arbitrary and capricious rules and regulations for the "binding and filing" of such petitions, where one small arbitrary detail in filing can be found "defective" by the NYRSC or a public proxy of the NYRSC that can invalidate all 15,000 signature, thus violating the Constitutional rights of each voter that signed the petition.. The BOE or NYRSC does not provide detailed or satisfactory instructions on how to file such petitions, leaving it vague by design, and setting administrative "traps" for petitioning candidates and voters signing their petitions. These "traps" are set to trick voters signing the Plaintiff's ballot into filling out information in a way in which the Board of Elections can throw out their signature, therefore violating the constitutionally protected right of the signator/voter by invalidating their signature due to a technicality produced by the "traps" detailed in this complaint.

16.     As set forth in detail below, it is mathematically and physically impossible for one person to collect the signatures by themselves, and instead a candidate needs an army of either volunteers and expensive hired staff, if the candidate has any hopes of meeting the requirement. Also as described below, because of the ease and inevitability of signature challenges, the 15,000 number is not realistic. A candidate must expect that at least half if not more of the signatures will be challenged, and therefore the actual number of required signatures is impossible to calculate, but is more accurately estimated at 30,000.

17.     "[T]he rule (still in effect this year) limits a voter from signing petitions for more than one candidate, thus resulting in a 'shrinking pool' of signers available to those collecting signatures;" is as true today as it was 25 years ago. Castronuova is not the only grassroots

candidate seeking ballot access, and must compete with other grassroots candidates for the same limited and "shrinking pool" of Republican voters. The establishment's chosen candidate does not need to compete. Still, because the establishment candidate enjoys the backing of the establishment party, members of the party with the ability/desire to sign the Plaintiff's petition (including councilmen/women, elected officials, Republican voters, general members and associates) will not sign a petition for any non-favored establishment candidate in fear of ostracization from the Republican Party establishment. This further shrinks the signature pool for the unfavored candidate and strengthens the incredible burden of the task of gathering petitions.

18.     The 15,000 signature requirement is clearly arbitrary as Republicans and Democrats have the same requirements even though registered Democrats outnumber registered Republicans by 2 to 1.[2] In Brooklyn, Democrats outnumber Republicans by 10 to 1, making it almost impossible to find a Republican.

19.     This Court also found that

> The combination of these rules not only made it difficult to get on the ballot, but also encouraged burdensome and expensive post-petition challenges for presidential candidates (other than the one supported by the Republican State Committee). The non-favored candidates had to allot tens of thousands, if not hundreds of thousands, of dollars to such challenges. Indeed, the campaign of Senator Dole, who was the candidate favored by the Republican State Committee in 1996, budgeted $700,000 for post petition challenges, because it was cheaper to avoid a primary contest than to compete in it. Such a result, of course, can be achieved by knocking a challenger off the ballot in a sufficient number of districts to reduce the challenger's incentive to compete in the state at all (given the cost of a media campaign in New York).

20.     In other words, Party-favored candidates have long ago adopted the strategy of deploying campaign funds to eliminate the competition at the signature gathering stage because

---

[2] In the 2016 presidential primary, the last presidential election where neither party ran an incumbent, Democratic primary voters outvoted Republican primary voters almost 2 to 1. *See* New York Primary Election Results 2016 - The New York Times (nytimes.com) https://www.nytimes.com/elections/2016/results/primaries/new-york.

it is easier and cheaper to knock out the competition through litigation than to face a challenger in a fair election.

21. One such tactic that has proved effective to knock out the competition by technicalities is the town/city "trap for the unwary." The Court noted 25 years ago that the town/city trap "served as the basis for the invalidation of thousands of otherwise perfectly valid signatures." As the Court illustrated by way of example:

> In one of Long Island's congressional districts, the large Town of East Hampton includes several discrete villages including East Hampton and Montauk. One who lives in Montauk usually views that as his or her "town," and will so state on a petition. This would invalidate the signature under New York law, because Montauk is not the town in which the signer resides; the town is East Hampton, though it is 20 miles down the highway and has a very different culture and character.

22. Shockingly, the town/city trap still exists today and is even built into the sample form petitions on the website of Defendant New York State Board of Election (BOE).[3] The sample form simply asks the signer to "Enter Town or City" and provides no warning for the unsuspecting signer (or candidate) to beware of the "trap." This "trap" is a violation of the right of the voter that signed the petition, whose clear intention is to aid in getting a candidate they support on the ballot, but this unfair and clear "trap" invalidates their signature.

23. N.Y. Elec. Law § 6-130 continues to incorporate the town/city "trap" by continuing to require that the signer put their town/city when it is completely unnecessary as there is no reason why the address alone should not suffice. This completely unnecessary requirement serves no purpose other than to create a "trap" to invalidate signatures based on a technicality.

---

[3] https://elections.ny.gov/system/files/documents/2023/07/designatingpetition.pdf (last visited March 28, 2024).

24. "Indeed, in 1996, [Billionaire Steve] Forbes was knocked off the ballot in four congressional districts on technicalities that had nothing to do with the number of valid signatures he had collected."

25. In *Molinari,* this Court noted that the history of the New York Republican primaries demonstrated that as a consequence of the unfair system, viable candidates chose not to even attempt to compete, and that those who attempted failed to qualify.

26. The Court concluded that the "legislative scheme, combined with empirical evidence as to its effects, led me to conclude that the scheme in its totality severely burdened ballot access." The Court found that the scheme failed the basic litmus test of whether a "reasonable diligent independent candidate [can] be expected to satisfy the signature requirements, or will it be only rarely that the unaffiliated candidate will succeed in getting on the ballot."

27. The Court noted that every so often there will be an "atypical" candidate who "because of fame or fortune or a political base within New York, will prevent the Republican State Committee from holding a primary without any contests." However, the typical candidate cannot meet the draconian requirements and therefore the "fundamental right to vote is infringed" by the unconstitutional scheme.

28. The Defendants in *Molinari* stipulated that "the provisions of New York State Election Law at issue herein impose an undue burden on access to ballot." The Court accepted the stipulation and issued injunctive relief to the plaintiffs.

29. This case is even more unfair than *Molinari* for several important reasons.

30. First, in *Molinari,* the plaintiffs were aspiring presidential candidates. In that case, all candidates were subject to the signature requirement, ***including the favored party candidate.***

31.     Here, the New York election law imposes an onerous undue burden on Castronuova and other grassroots candidates, while simultaneously exempting the establishment's favored candidate from the same requirement for no legitimate or rational reason.

32.     The only reason that the Party's chosen candidate gets a free pass and is exempt from this burdensome law is because it is the Party's chosen candidate.

33.     This is a clear *prima facie* Fourteenth Amendment equal protection violation.

34.     The fact that the establishment candidates are exempt suggests that even the establishment candidates would not be able to satisfy the burden of gathering signatures or of defending against signature challenges from the public.

35.     Second, a presidential election by its nature involves "atypical" candidates that have fame and/or fortune such as billionaire Steve Forbes or long time establishment politician John McCain. Further, presidential candidates often have "war chests" amassed from national fundraising efforts and are able to deploy funds raised in other states with less onerous burdens towards signature gathering in New York. These atypical candidates have the funds, name recognition, and campaign infrastructure to alleviate the burden of the signature gathering requirement. And yet, despite these advantages, Forbes and McCain were only able to access the ballot by bringing an action to this Court.

36.     Here, Castronuova is not atypical. She has neither the fame or fortune of Forbes or McCain. She is a grassroots candidate who, during the petitioning period, raised approximately $23,000.00 from 320 small money donors that want to vote for her in the primary or the general election. These funds that should have gone towards a campaign had to be exhausted in efforts just to access the ballot.

37.     Though Senatorial primaries share the statewide nature of presidential primaries, they do not share the notoriety which makes fundraising and signature gathering harder for Senate candidates, especially if the aspiring candidate is an average person, like Castronuova.

38.     These laws allow the NYRSC (and the Democrat equivalent) to unconstitutionally "coronate" a candidate against the will of the disenfranchised voters and the people, violating both the Constitutionally protected rights of the voter to choose a candidate and the "unfavored" candidate's right to appear on the ballot. The "chosen" NYSRC candidate and the Republican Party backing them has unconstitutionally exempted themselves from the very rules they created to keep anyone besides their "favored" candidate from the ballot, knowing the near impossibility and expense of the task of gathering 15,000 - 30,000 signatures from registered Republicans around the state. This is a blatant violation of the Constitution of the United States.

39.     The Seventeenth Amendment to the United States Constitution, ratified over 100 years ago, established the direct election of United States senators in each state. The Amendment reads in pertinent part, "The Senate of the United States shall be composed of two Senators from each State, *elected by the people thereof*[.]" (emphasis added). Prior to the Amendment, pursuant to Article I, Section 3, Senators were elected by the members of the state legislatures. The 17th Amendment took the vote away from a small group of politicians and gave the power to elect senators directly to the People. These unconstitutional rules subvert the Seventeenth Amendment by taking the power to choose their candidates from the People and delivering it to the Party leadership.

40.     Plaintiffs are requesting the appropriate injunctive relief that orders the Defendants to allow Plaintiff Castronuova's name to appear on the ballot for the Republican Primary election, and the appropriate injunctive relief that allows Plaintiff Tabacco to effectively

vote for Plaintiff Castronuova to be the Republican candidate that appears on the ballot in the general election for United States Senator to be held on November 5, 2024.

41.     Plaintiffs also seek an award for the expenses incurred in the attempts to satisfy the unconstitutional unduly burdensome signature requirement, to be determined at trial, as well as court costs and attorneys fees for bringing this action, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

42.     The Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. 1331, 1343(a)(3), (4), 2201, and 42 U.S.C. 1983.

43.     Venue of this action is properly in this district, pursuant to U.S.C. 1391(b), on the grounds that a substantial part of the events or omissions giving rise to the claims alleged herein occurred, and will continue to occur, in this district.

## PARTIES

**Cara Castronuova**

44.     Plaintiff Cara Castronuova is a resident of New York and is seeking to obtain the Republican nomination for United States Senator for the State of New York for the national election to be held on November 5, 2024.

45.     Castronuova is seeking access to the Republican ballot for the primary election that will be held on June 25, 2024, but will be deprived from having an opportunity to do so because of New York Republican State Committees restrictive system that effectively bars anyone from accessing the ballot except for the candidate chosen by the New York Republican State Committee.

46.     Castronuova, is a lifelong New Yorker, born and raised in Elmont, NY in Nassau County, where she currently resides.

47.     She is a former champion boxer, a journalist, and a community activist.

48.     In 2022, she ran for New York State Assembly as a Republican in a predominantly Democrat district. Despite the voter registration disadvantage, Castronuova still received over 42% of the vote in the general election.

49.     In 2024, she was nominated and endorsed by Richmond County to go to the New York State Republican convention on February 22 as Richmond's choice for the Republican nominee for the November 5, 2024 Senate election.

50.     She appeared at the convention and was seconded by a delegate from Yates County. By being seconded, she was permitted to speak on the floor to advocate for her candidacy, she was included in the roll call, and County's were permitted to vote for her as their choice to be the nominee for the Republican party.

51.     The next requirement to appear on the ballot was for Castronuova to receive 25% of the weighted vote of the 62 counties at the Convention.

52.     At the convention, the Party leadership pressured the chairs of the counties to vote for the candidate favored by the party leadership, which was not Castronuova.

53.     Delegates, including several chairmen/women from several counties voted for Castronuova, including Rensselaer County, Madison County, Yates County, Richmond County, Albany County, Broome County, Chenango County, Erie County, and Herkimer County. Several counties voted unanimously for her, including Madison, Yates, Rensselaer and Richmond.

54. Despite not being favored by the Party, Castronuova received over 8% of the weighted vote- showing that she had substantial support from all across the state and placed second out of the three candidates vying for the weighted vote at the Convention.

55. It is common knowledge that Republican Party leadership has historically pressured the chairs and delegates throughout the state to coalesce behind one candidate and essentially and unconstitutionally "avoid a primary" by successfully pressuring over 80 percent of the voting members of the delegates to vote for a "favored candidate". The party leadership chose to pressure the individual counties to coronate a candidate instead of leaving the choosing to the People of their party in a fair primary. Any candidate with 25 percent of the weighted vote could compete in a primary. There were three declared candidates at the Convention, meaning technically four candidates could receive 25 percent of the weighted vote. The party chose to grant only one "chosen candidate" the relief of the undue burden of collecting 15,000 - 30,000 signatures from Republicans around the state.

56. Multiple delegates told Castronuova they thought she was the better candidate for this particular Senate race, but could not give her their weighted vote because party "leadership" pressured them to coalesce around another "favored candidate" and party leadership did not want a Republican primary.

57. Therefore, Castronuova failed to obtain 25% of the vote at the convention. In order to get on the ballot, she then became required to take on what this court found to be an "undue burden" (to unconstitutionally gather an absurd amount of signatures to access the ballot.)

58.     According to the rules, signature collection could only begin on February 27, 2024. Any signatures collected prior to this arbitrary date are invalid and do not count towards the 15,000 requirement.

59.     There is no legitimate reason why signatures cannot be collected earlier, especially if an aspiring candidate knows that they are unlikely to obtain 25% of the vote of the delegates at the convention.

60.     It is practically impossible for an average citizen to meet the 15,000 signature requirement. To meet the requirement, Castronuova is required to physically obtain 15,000 pen ink signatures from Registered Republicans in New York State in 13 of the 26 Congressional Districts. New York is 54,556 square miles, with 62 counties from Montauk Point on Long Island all the way up to Niagara Falls on the border of Canada.

61.     Collecting signatures requires the candidate to go person to person, ask if they are a registered Republican, and if they are, ask them to kindly support them by providing them with their name and address. It is physically impossible for one person to accomplish this on their own. Going door to door, it is only possible to collect an average of 6 signatures per hour. An aspiring candidate working 12 hour days for 37 days with no breaks and collecting 6 signatures per hour would not even be able to collect 3,000 signatures. Five full time volunteers doing the same would not meet the 15,000 minimum. Going to large events like parades, more signatures can be gathered in an hour, but those are "fluff" signatures that are almost certain to fail the inevitable challenges either because they are inaccurate or not registered Republicans. Moreover, even for large events, New York State signature ballots only contain five signature spaces per page. Each space requires signers to legibly spell out their first and last name, signature, address, and town or city.  From start to finish, including giving signers instructions

and responding to any questions they have, it takes, on average, about three minutes to complete the entire signature line.

62.     Moreover, finding registered Republicans in some areas of New York can be like finding a needle in a haystack. Many of those Republicans, even those who would vote for Castronuova in private behind a curtain, refuse to sign a public petition endorsing a candidate that is not favored by the party for fear of suffering professional or social consequences.

63.     Door knocking has become harder in recent years. During the day people work and are at school. At night they do not open the doors for strangers out of safety concerns or else so as not to be disturbed. People are especially concerned about identity theft which is a growing concern that did not exist in 1996 and 2000 to the extent it does today. People are far more hesitant to turn over their name, address, and signature in the digital age.

64.     The Party apparatus has resources for gathering signatures that are not available to Castronuova such as lists of registered Republicans. These are prohibitively expensive to purchase.   They also have access to lists of volunteers throughout the state. Many of these volunteers would be supportive of Castronuova, but she has no way to access them.   Moreover, many committee chairpersons who are loyal to the New York Republican State Comittee's hand selected candidate will refuse to share resources, or even meet, with other candidates – putting these candidates at a significant disadvantage.

65.     The signature requirement is completely unrealistic for any working-class American with a job or family. With a workforce paid $25 per hour, it would cost a minimum of $200,000 minimum to collect the signatures – that includes labor expenses for a team to organize the entire state-wide operation, payroll for hundreds of "petition walkers," the cost of printing

thousands of ballots and supplies, travel expenses, delivery of petitions, postage and loss of work (this becomes your new non-paying job).

66. All signatures must be collected by April 4, 2024 and submitted in a special "binding." The rules for the binding of the signatures are themselves arbitrary and onerous. It requires special expertise which is only possessed by experienced party staff or else professional companies that are prohibitively expensive. Castronuova and her team must learn on their own how to bind the signatures which can take a team of volunteers working together several days to accomplish, and even then, it is uncertain if they perfectly adhere to all the intricate details. Any error could be subject to a potential challenge that can invalidate all of the signatures. These onerous rules are arbitrary and serve no legitimate or rational purpose. Their only purpose is to set traps to block candidates like Castronuova from accessing the ballot.

67. All signatures must be pure ink and cannot be scanned and sent by email. This is also an undue burden. New York state spans 12-13 hours, by car, from top to bottom. Volunteers collecting signatures in Buffalo must incur the expense of delivering the signatures to Castronova who must then deliver them to Albany. This also means that signatures cannot be collected in certain areas of the state on the last one or two days, which further curtails the already arbitrarily short period to collect signatures.

68. The 37 days is not actually 37 days, it is far less. It does not account for religious holidays, inclement weather, and the time it takes to collect, organize, vet, and bind the signatures. Realistically, there are really less than 30 days to collect the signatures.

69. Moreover, the requirement is unfair because while Castronuova has to endure this undue burden, her competitor has 37 days to begin his campaign. Castronuova has no time to

fundraise, attend events, work on her campaign strategy and platform, do interviews, or produce content. Her network of volunteers is also all consumed with this burdensome requirement.

70.     It is unlikely that even the Party could gather the 15,000 signatures in time given the onerousness of the rules and the expense. They have exempted themselves and their favored candidates from the very rules they set for anyone besides their favored candidate.

71.     On top of all of the aforementioned, Castronuova has to be concerned that her signatures will be challenged. She must collect at least double the signatures required, in this case that is 30,000 signatures, in order to stave off challenges, litigation, and other strikes by the Party. Political advisors and insiders acknowledge that double the signatures must be collected for a "safety net" against the Republican party's arbitrary rules that will surely knock off more than half a candidate's signatures. Even if 30,000 signatures were collected, she has no way to ensure it is enough because there is no limit to the types of challenges that can be brought even against valid signatures.

72.     Castronuova would need to collect between over 800 signatures per day in the time period allotted to meet the signature requirement. This is physically impossible for an entire political operation to do, let alone one person to do, and as proven in this court before-impossible for even a multi-millionaire to accomplish.

73.     An average signature collector averages 6 signatures an hour on a good day, therefore 48 signatures in a full 8 hour work day.

74.     Castronuova was forced to take a leave of absence from her work to gather signatures.

75. She also spent sums out of her own pocket to cover expenses such as printing, administration, gas, travel, and hotels that were only necessary for this requirement and would not have been necessary for her campaign.

76. Despite this undue burden, Castronuova made her best efforts to obtain the signatures. She has already collected over 13,500 signatures from all over the state, and has volunteers working throughout the state who have collected more that have not arrived in her possession yet.

77. She was able to do this only because of the substantial grassroots support that she enjoys throughout the state and the many people who have volunteered to assist her.

78. As of Friday, March 29, 2024, Castronuova has raised approximately $23,670.43 from approximately 320 donors, for an average donation of $73,97. She only received a single maximum dollar donation, without which, her average donation is just over $50. That money is almost entirely exhausted and she has not even begun to campaign.

79. On March 27, 2024, Castronuova sent an email to Defendant Ed Cox asking for an extension. Castronuova never received a reply.

80. The weather predicts severe weather conditions that will make signature collection impossible or extremely difficult for the remaining days until April 4.

**John Tabacco**

81. Plaintiff John Tabacco is a resident of New York and is a registered voter enrolled in the Republican Party and has voted regularly in New York state elections for many years. Tabacco is deprived of his right to choose his party's candidate for United States Senator, including Castronuova whom he would support for that position, because of the New York State

Republican Committee's restrictive system that effectively bars all potential candidates for United States Senator but those who are endorsed by the New York Republican State Committee.

**Chairman Ed Cox**

82.    Defendant Ed Cox is currently the Chairman of the New York Republican State Committee.

**NYRSC**

83.    Defendant New York Republican State Committee is the New York State affiliate of the United States Republican Party (GOP). The purpose of the committee is to nominate Republican candidates for election to New York and federal political roles. It also assists its nominees in their election campaigns.

84.    Chairman Cox is the leader and most influential member of the NYRSC.

**BOE**

85.    Defendant New York State Board of Elections has "jurisdiction of, and [is] responsible for, the execution and enforcement of ... statutes governing campaigns, elections and related procedures." N.Y. Elec. L. 3-104(1).

86.    The BOE continues to implement the same scheme that this Court found to be unconstitutional nearly 25 years ago.

**Other interested parties**

87.    As a courtesy, Plaintiffs have also provided notice of this lawsuit and a copy of the complaint to the New York State Democratic Committee which is not a party to this lawsuit. Plaintiffs have also provided a copy of the complaint to the New York State Attorney General.

**SHORT AND PLAIN STATEMENT OF CLAIM**
**SHOWING THAT PLAINTIFF'S ARE ENTITLED TO RELIEF**

88.     The foregoing paragraphs are hereby repeated, re-alleged, and incorporated as if set forth fully herein.

89.     Cara Castronuova seeks to access the ballot of the 2024 Republican Senate primary.

90.     John Tabacco supports Castronuova's candidacy and wishes to vote for her in the Republican primary.

91.     Castronuova is not the favored candidate of the NYSRC.

92.     Pursuant to New York election law (N.Y. Elec. Law § 6-136) and the rules of the NYSRC, to appear on the ballot for the Primary, Castronuova must gather 15,000 signatures in 37 days in a minimum of 13 different congressional districts across the state of New York.

93.     The favored candidate of the NYSRC does not need to gather any signatures to appear on the ballot.

94.     Based on the foregoing facts set forth above, it is unduly burdensome, if not impossible to meet the 15,000 signature requirement in 37 days.

95.     The 15,000 signature requirement is arbitrary.

96.     The 15,000 signature requirement is one of the highest, if not the highest signature requirement of any state.

97.     This Court has held in the past that New York's process to access the ballot for candidates not favored by the Party is unconstitutional.

98.     Despite this massive hurdle, Castronuova made her best efforts to satisfy the signature requirements.

99.     In many other states, Castronuova would qualify for the primary ballot based on the signatures that she has already gathered.

100.    In some states, she would not need to gather signatures at all.

101.    Even if Castronuova would gather 15,000 signatures of registered Republicans, it is inevitable that the signatures would be challenged, which would necessitate Castronuova to expend substantial sums to litigate the challenges.

102.    Some challenges will be frivolous, but others, like the city/town trap, may technically hold up in court and invalidate signatures. It is impossible to predict whatever technical traps the establishment and their lawyers can conceive. Accordingly, even if Castronuova gathers 15,000 or more signatures, it is impossible to know if she will be allowed onto the ballot.

103.    Under the current regime, there is no reasonable path for Castronuova or any ordinary citizen to access the ballot unless they are the favored Party candidate.

104.    No one has successfully accessed the ballot by way of gathering signatures since at least 1996.

105.    Because Castronuova cannot qualify for the ballot, Tabacco will be deprived of voting for the candidate of his choice.

106.    Tabacco and Castronuova both signed petitions in support of Castronuova's candidacy.

107.    Under the current regime, those petitions can be challenged and possibly invalidated without providing the signers with notice or a hearing.

108.    In the past, signatures have been invalidated based on technicalities.

109.    Catronuova can never collect enough signatures to ensure access to the ballot because no matter how many she collects, her opponents can challenge and invalidate signatures until she falls below the threshold.

110.     This unconstitutional scheme deprives all New York state voters of voting for a candidate other than the Party's chosen candidate.

111.     Even Democrat and independent voters are affected by this scheme, as there are democrats who would vote for Castronuova in the general election if given the chance, but the scheme deprives them of the ability to vote for her.

## CLAIMS FOR RELIEF

### (COUNT ONE)
### First and Fourteenth Amendments -
### Burden on Rights to Vote and Associate

*By all Plaintiffs against all Defendants*

112.     The foregoing paragraphs are hereby repeated, re-alleged, and incorporated as if set forth fully herein.

113.     The Defendants' scheme, both in its totality and by virtue of its individual but related elements, places an undue burden on the right to vote under the First Amendment.

114.     Candidates without the support of the Republican State Committee are substantially burdened.

115.     The New York ballot access scheme as applied to the Primary poses an undue burden in its totality on the right to vote under the First Amendment.

116.     Several individual but related elements of that scheme are themselves unconstitutional.

### (COUNT TWO)
### Fourteenth Amendment
### Violation of Procedural Due Process

*By all Plaintiffs against all Defendants*

117.     The foregoing paragraphs are hereby repeated, re-alleged, and incorporated as if set forth fully herein.

118. Plaintiffs have both signed petitions on behalf of Castronuova.

119. Pursuant to the scheme in place, those petitions may be challenged by anyone for any reason.

120. There is no law requiring that Plaintiffs be given notice if their petitions are challenged.

121. In the past, petitions have been challenged without notifying the signer of the challenge.

122. No hearing is afforded for the signer to defend against the challenge of his petition.

123. This is a violation of the Fourteenth Amendment's due process clause.

## (COUNT THREE)
### Fourteenth Amendment
### Violation of Equal Protection Clause

#### *By all Plaintiffs against all Defendants*

124. The foregoing paragraphs are hereby repeated, re-alleged, and incorporated as if set forth fully herein.

125. Voting is a fundamental right, and is protected by the Fourteenth Amendment's guarantee of equal protection under the laws.

126. New York's laws and Primary voting scheme severely and unduly burdens the fundamental right to vote.

127. The requirement of 15,000 signatures is arbitrary, has no rational basis and serves no legitimate interest.

128. Because the number of New York Democrats is far greater than the number of New York Republicans, the burden imposed by New York's voting law treats Republicans in a

way that is not equal to Democrats. It is far easier for a Democrat to gather signatures than it is for a Republican.

129.    There is no rational reason why the number of signatures should be the same for Republicans and Democrats.

130.    The law also treats favored candidates in a way that is not equal to the way the law treats candidates who are not favored. Favored candidates have no signature requirement, while non-favored candidates must gather 15,000 signatures that can survive challenges.

131.    The law discriminates for no rational reason and serves no legitimate interest.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully ask this Court:

(1)    To enter judgment declaring and determining that the current system of accessing the ballot for statewide elections, established and facilitated by N.Y. Elec. L. §§ 6-104, 6-130, 6-136, violates the United States Constitution, specifically the First and Fourteenth Amendments, both facially and as applied to Plaintiffs;

(2)    To grant the appropriate equitable relief, including an injunction that orders the Defendants to include Plaintiff Cara Castronuova's name to appear as a candidate for Senator on the ballot for the New York State Republican Primary election;

(3)    To grant the appropriate equitable relief which gives Plaintiff John Tabacco an opportunity to vote effectively for Cara Castronuova to be the Republican candidate for Senator in the general election for United States Senator to be held on November 5, 2024;

(4)    To award Plaintiffs damages in an amount to be determined at trial;

(5)     To award Plaintiffs their costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

(6)     To award such other equitable and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all triable issues.

**Signatures on the following page**

Dated: April 1, 2024

Respectfully submitted,

Cara Castronuova
1310 Times Ave.
Elmont, NY 11003
*Plaintiff, pro se*

John Tabacco
120 Bayview Terrace
Staten Island, NY 10312

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of New York

| | |
|---|---|
| Cara Castronuova, John Tabacco ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |
| *Plaintiff(s)* ) | Civil Action No. |
| v. ) | |
| Ed Cox ) | |
| New York Republican State Committee ) | |
| New York Board of Elections ) | |
| ) | |
| _____ ) | |
| *Defendant(s)* ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

Ed Cox
315 state st
Albany NY 12210

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Cara Castronuova 1310 Times Ave., Elmont, NY 11003
John Tabacco 120 Bayview Terr. Staten Island, NY 10312

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**BRENNA B. MAHONEY**
*CLERK OF COURT*

Date: _____                    _____
                                                  *Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Cara Castronuova, John Tabacco | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | )     Civil Action No. |
| Ed Cox | ) |
| New York Republican State Committee | ) |
| New York Board of Elections | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   New York Republican State Committee
315 State Street
Albany, NY 12210

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Cara Castronuova 1310 Times Ave., Elmont, NY 11003
John Tabacco 120 Bayview Terr. Staten Island, NY 10312

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

## BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____        _____

                                            *Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT
for the
### Eastern District of New York

| | |
|---|---|
| Cara Castronuova, John Tabacco ⟩⟩⟩⟩ | |
| _____ ⟩ | |
| *Plaintiff(s)* ⟩ | Civil Action No. |
| v. ⟩ | |
| Ed Cox ⟩ | |
| New York Republican State Committee ⟩ | |
| New York Board of Elections ⟩ | |
| _____ ⟩ | |
| *Defendant(s)* ⟩ | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

New York State Democrat Party
64 Beaver St.
New York, NY 10004

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Cara Castronuova 1310 Times Ave., Elmont, NY 11003
John Tabacco 120 Bayview Terr. Staten Island, NY 10312

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

### BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Civil Action No.

# PROOF OF SERVICE
## *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____         _____
                                           *Server's signature*

                                  _____
                                           *Printed name and title*

                                  _____
                                           *Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Cara Castronuova, John Tabacco<br><br><br>_____<br>*Plaintiff(s)*<br>v.<br>Ed Cox<br>New York Republican State Committee<br>New York Board of Elections<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Board of Elections
40 N. Pearl Street, Suite 5
Albany, NY 12207

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Cara Castronuova 1310 Times Ave., Elmont, NY 11003
John Tabacco 120 Bayview Terr. Staten Island, NY 10312

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

BRENNA B. MAHONEY
*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Cara Castronuova, John Tabacco<br><br>_____<br>*Plaintiff(s)*<br>v.<br>Ed Cox<br>New York Republican State Committee<br>New York Board of Elections<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

        Managing Attorney     s Office
        Office of the New York State Attorney General
        28 Liberty Street, 16th Floor
        New York NY 10005

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Cara Castronuova 1310 Times Ave., Elmont, NY 11003
                              John Tabacco 120 Bayview Terr. Staten Island, NY 10312

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**BRENNA B. MAHONEY**
*CLERK OF COURT*

Date: _____          _____
                                                             *Signature of Clerk or Deputy Clerk*

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

❑ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❑ I returned the summons unexecuted because _____ ; or

❑ Other *(specify)*:

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: