UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CARA CASTRONUOVA and JOHN TABACCO,

*Plaintiffs*,

-against-

ED COX, Chairman, New York Republican State
Committee, NEW YORK REPUBLICAN STATE
COMMITTEE, and NEW YORK STATE BOARD OF
ELECTIONS,

*Defendants*.

1:24-cv-02428 (RER) (LB)

---

## DEFENDANT NEW YORK STATE BOARD OF ELECTIONS'
## CONSOLIDATED MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION
## AND IN SUPPORT OF NYSBOE'S MOTION TO DISMISS

LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendant*
*New York State Board of Elections*
28 Liberty Street
New York, NY 10005

OWEN T. CONROY
Assistant Attorney General
   *of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ..........................................................................................................................2

    A.   Primary Ballot Access in New York State ................................................................2

    B.   Plaintiffs' Allegations ...............................................................................................5

    C.   Plaintiffs' Motion for a Preliminary Injunction .......................................................7

    D.   Plaintiff Castronuova's Designating Petition ...........................................................7

    E.   Recent History of Candidates Obtaining Primary Ballot Access by Filing Designating Petitions for Statewide Office ...........................................................................................8

STANDARD OF REVIEW ............................................................................................................8

ARGUMENT ...............................................................................................................................9

I.    PLAINTIFFS' CLAIMS AGAINST NYSBOE MUST BE DISMISSED ON ELEVENTH AMENDMENT SOVEREIGN IMMUNITY GROUNDS ..........................................................9

II.    PLAINTIFFS HAVE NOT ESTABLISHED A CLEAR LIKELIHOOD OF SUCCESS AND THEIR COMPLAINT FAILS TO STATE A CLAIM ....................................................11

    A.   Plaintiffs Have Not Stated a Claim for a Violation of the Right to Vote ..................11

    B.   Plaintiffs Have Not Stated a Due Process Claim ......................................................20

    C.   Plaintiffs Have Not Stated an Equal Protection Claim .............................................21

    D.   Plaintiffs Have Not Stated a Claim Under the Seventeenth Amendment ..................23

III.    PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM OR THAT THE PUBLIC INTEREST WEIGHS IN THEIR FAVOR .............................................................23

    A.   No Irreparable Harm ................................................................................................23

    B.   The Public Interest Does Not Weigh in Favor of a Preliminary Injunction ..............24

CONCLUSION ...........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. Louis,*
  No. 15-CIV-2575 (AMD) (RLM), 2016 WL 816789 (E.D.N.Y. Feb. 29, 2016) ..............................3

*Am. Party of Texas v. White,*
  415 U.S. 767 (1974) ..................................................................................................................15

*Anderson v. Celebrezze,*
  460 U.S. 780 (1983) ..................................................................................................................11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................................................................9

*Aurecchione v. Schoolman Transp. Sys.,*
  426 F.3d 635 (2d Cir. 2005) ........................................................................................................9

*Burdick v. Takushi,*
  504 U.S. 428 (1992) ..................................................................................................................11

*Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985) ..................................................................................................................21

*Crawford v. Marion Cty. Election Bd.,*
  553 U.S. 181 (2008) ..................................................................................................................12

*Credico v. New York State Bd. of Elections,*
  751 F. Supp. 2d 417 (E.D.N.Y. 2010) ........................................................................................10

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
  841 F.3d 133 (2d Cir. 2016) ........................................................................................................8

*Garcia v. Paylock,*
  No. 13-cv-2868 (KAM), 2014 WL 298593 (E.D.N.Y. Jan. 28, 2014) ..........................................10

*Gold v. Feinberg,*
  101 F.3d 796 (2d Cir. 1996) ......................................................................................................21

*Holmes v. Caliber Home Loans, Inc.,*
  No. 16-CV-3344 (KMK), 2017 WL 3267766 (S.D.N.Y. July 31, 2017) ........................................10

*Iwachiw v. NYC Bd. of Elections,*
  217 F. Supp. 2d 374 (E.D.N.Y. 2002), *aff'd, Iwachiw v. New York City Bd. of Elections,* 126 F. App'x 27 (2d Cir. 2005) ................................................................................10

*Keitt v. New York City,*
    882 F. Supp. 2d 412 (S.D.N.Y. 2011)................................................................10

*La Vigne v. Costco Wholesale Corp.,*
    284 F. Supp. 3d 496 (S.D.N.Y. 2018), *aff'd,* 772 F. App'x 4 (2d Cir. 2019)......................3

*Libertarian Party of Connecticut v. Lamont,*
    977 F.3d 173 (2d Cir. 2020)................................................................15

*Libertarian Party of New York v. New York Bd. of Elections,*
    539 F. Supp. 3d 310 (S.D.N.Y. 2021)................................................14, 23

*Marino v. City Univ. of New York,*
    18 F. Supp. 3d 320 (E.D.N.Y. 2014)................................................................10

*McMillan v. New York Bd. of Election,*
    234 F.3d 1262 (2d Cir. 2000) (unpublished summary order) ........................12-13

*Molinari v. Powers,*
    82 F. Supp. 2d 57 (E.D.N.Y. 2000)................................................15, 17-18

*Moore v. Desposito,*
    No. 15-cv-4319 (CBA) (LB), 2016 WL 4223967 (E.D.N.Y. Apr. 19, 2016)...................10

*Murawski v. New York State Bd. of Elections,*
    285 F. Supp. 3d 691 (S.D.N.Y. 2018) ................................................10, 14

*Murray v. Cuomo,*
    No. 1:20-CV-03571-MKV, 2020 WL 2521449 (S.D.N.Y. May 18, 2020)...................8-9

*Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,*
    769 F.3d 105 (2d Cir. 2014)................................................................24

*Prestia v. O'Connor,*
    178 F.3d 86 (2d Cir. 1999)................................................................12, 16

*Price v. New York State Bd. of Elections,*
    540 F.3d 101 (2d Cir. 2008)................................................................12

*Reynolds v. Sims,*
    377 U.S. 533 (1964)................................................................24

*Rivera-Powell v. New York City Bd. of Elections,*
    470 F.3d 458 (2d Cir. 2006)................................................................21

*Rockefeller v. Powers,*
    78 F.3d 44 (2d Cir. 1996)................................................................15

*SAM Party of New York v. Kosinski*,
    576 F. Supp. 3d 151 (S.D.N.Y. 2021), *aff'd sub nom. Libertarian Party of New York v. New York State Bd. of Elections*, No. 22-44-CV, 2022 WL 10763416 (2d Cir. Oct. 19, 2022) ............................................................................................................14

*SAM Party of New York v. Kosinski*,
    987 F.3d 267 (2d Cir. 2021) ............................................................................23

*Stark v. Kelleher*,
    32 A.D.3d 663 (3d Dep't 2006) ......................................................................18

*Stoppenbach v. Sweeney*,
    98 N.Y.2d 431 (2002) ......................................................................................18

*Tiraco v. New York State Bd. of Elections*,
    963 F. Supp. 2d 184 (E.D.N.Y. 2013)............................................................22

*Tischler v. Hikind*,
    98 A.D.3d 926 (2d Dep't 2012) ......................................................................19

*Ulrich v. Mane*,
    383 F. Supp. 2d 405 (E.D.N.Y. 2005)...........................................13-14, 19-20

*United States v. Salerno*,
    481 U.S. 739 (1987)...........................................................................................9

*Virgilio v. City of N.Y.*,
    407 F.3d 105 (2d Cir. 2005) ..............................................................................9

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989).............................................................................................11

*Zobel v. New York State Bd. of Elections*,
    254 A.D.2d 520 (3d Dep't 1998) ..................................................................5, 18

## U.S. CONSTITUTIONAL PROVISIONS

First Amendment..................................................................................................1, 13, 23

Eleventh Amendment ...........................................................................................1, 9-10

Fourteenth Amendment ........................................................................................passim

Seventeenth Amendment.............................................................................................23

## FEDERAL STATUTES

52 U.S.C.A.
    § 20302(a)(8) ....................................................................................................5

42 U.S.C.
§ 1983 ........................................................................................................... 11, 21
§ 1985 ................................................................................................................... 11

**STATE STATUTES**

N.Y. C.P.L.R.
§§ 5701, *et seq.* ...................................................................................................... 5

N.Y. Elec. Law
§ 4-110 ..................................................................................................................... 5
§ 6-104 ........................................................................................................... 3, 5-6, 22
§ 6-104(2) ..................................................................................................... 3, 22
§ 6-130 ................................................................................................................... 18
§ 6-132 ................................................................................................................... 17
§ 6-134(4) ................................................................................................................ 4
§ 6-134(6) .............................................................................................................. 19
§ 6-136 ............................................................................................................ passim
§ 6-136(1) ........................................................................................................ 3, 14
§ 6-140 ................................................................................................................... 18
§ 6-154(2) ...................................................................................................... 4, 20-21
§ 6-154(5) ........................................................................................................... 4, 21
§ 6-158(1) ................................................................................................................ 4
§ 6-160(2) ................................................................................................................ 5
§ 6-166 .................................................................................................................... 5
§ 16-100 .................................................................................................................. 4
§ 16-102(2) .............................................................................................................. 4

N.Y. Election Law
Article 16 ........................................................................................................ 4-5, 21

**RULES**

Federal Rule of Civil Procedure 12 ..................................................................... 1, 11

Federal Rule of Civil Procedure 12(b)(1) ............................................................ 9, 11

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 9

Federal Rule of Evidence 201 ................................................................................. 3

## PRELIMINARY STATEMENT

Defendant New York State Board of Elections ("NYSBOE") respectfully submits this consolidated memorandum of law in opposition to Plaintiffs' motion for a preliminary injunction (ECF No. 3), and in support of NYSBOE's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12.

Plaintiff Cara Castronuova seeks placement of her name on the ballot for the June 25, 2024 primary election for nomination as the Republican candidate for the office of United States Senator. Ms. Castronuova must, like all candidates, demonstrate some significant modicum of support in order to gain placement on the ballot. Under New York Election Law, candidates seeking to compete in a primary election for a statewide office have multiple paths to demonstrate such support and thereby gain access to the primary ballot, including by a vote of the party's state committee or, alternatively, by submitting a designating petition with a certain number of signatures of enrolled party voters. Ms. Castronuova has submitted such a petition, which is currently under review by NYSBOE. She nevertheless seeks to exempt herself from the statutory requirements and asks this Court to issue the extraordinary relief of ordering NYSBOE to bypass the New York Election Law procedure and place her name on the ballot, regardless of whether her petition is ultimately found to contain a sufficient number of valid signatures. The Court should deny Plaintiffs' motion for a preliminary injunction and dismiss the Complaint in full, for multiple reasons.

*First*, NYSBOE is immune from suit in federal court under the Eleventh Amendment. All claims against it must be dismissed for lack of subject matter jurisdiction.

*Second*, Plaintiffs have not established a clear likelihood of success on the merits, and their Complaint fails to state a claim, as to all three causes of action stated in the Complaint. Plaintiffs' First Amendment voting rights claim fails because the Second Circuit and district courts in the Circuit have repeatedly rejected similar challenges to New York State's designating petition signature requirement.

1

The cases cited by Plaintiffs are distinguishable because they addressed then-existing, unique features of the presidential primary process that do not apply here. Plaintiffs' Due Process claim fails because Ms. Castronuovo will be given notice of objections to her petition and the opportunity to be heard. New York Election Law further provides her the opportunity to seek judicial review if she is dissatisfied with the outcome of the objections process. Plaintiffs' Equal Protection claim fails because they have not alleged any facts suggesting that they have been subjected to intentional or purposeful discrimination, or that they have been treated differently than similarly situated persons.

*Third*, Plaintiffs have not demonstrated irreparable harm because they have not shown a clear likelihood of success on the merits.

*Fourth*, the public interest does not weigh in favor of the extraordinary relief Plaintiffs demand, which would likely have downstream consequences that would severely disrupt the orderly administration of the primary election just weeks before ballots must be finalized and mailed to voters.

## BACKGROUND

### A. Primary Ballot Access in New York State

New York State has a strong interest in ensuring that a prospective candidate seeking placement on an election ballot be able to demonstrate some significant modicum of support. Declaration of Kristen Zebrowski Stavisky ("Zebrowski Stavisky Decl.") at ¶ 11.[1] This requirement is intended to uphold multiple important election administration objectives, including that the ballot does not become confused, cluttered, and unwieldy for voters and election administrators; preventing voter confusion and frustration; and avoiding fraudulent and frivolous candidacies. *Id.*

A prospective candidate seeking to appear on the primary election ballot for nomination as a

---

[1] NYSBOE relies on the testimony in the Zebrowski Stavisky Declaration as support in opposition to Plaintiffs' motion for a preliminary injunction. NYSBOE does not rely on the testimony in the declaration in support of its motion to dismiss, except where the information presented is a matter of public record of which judicial notice may be taken. *See infra* at 3 n.2.

party's candidate for an elected office in New York has multiple paths to demonstrate support for her candidacy and thereby reach the ballot. *See* Zebrowski Stavisky Decl. ¶¶ 2-10. *First*, pursuant to N.Y. Elec. Law § 6-104, the candidate may seek to become the party's designated candidate for nomination for the office. A party's state committee selects the party's designated candidate by majority vote. N.Y. Elec. Law § 6-104(2). *Second*, a candidate who did not receive the majority vote by the state committee, but who did receive 25 percent or more of the votes cast, may make a written demand to NYSBOE that her name appear on the primary ballot as a candidate for the nomination. N.Y. Elec. Law § 6-104(2). *Third*, if the candidate fails to receive 25 percent or more of the votes cast by the state committee, she may still pursue access to the primary ballot by filing a designating petition that contains a specified number of valid signatures provided by members of the electorate. The required number of signatures varies by office, as set forth in New York Election Law § 6-136. Prospective candidates seeking a place on a primary ballot for statewide office must submit a petition signed by the lesser of 15,000 voters, or five percent of the total number of enrolled voters of the party in the state, with at least 100 signatures coming from each of one-half of the congressional districts of the state. N.Y. Elec. Law § 6-136(1). As New York has 26 Congressional districts, the geographic requirement applies to 1,300 of the 15,000 signatures. Zebrowski Stavisky Decl. ¶ 7.

The current New York State Republican Party enrollment is 2,903,144, of which 2,695,185 are in active status. *Id.* ¶ 12.[2] 15,000 signatures represents 0.516% of all Republican voters in New York State and 0.556% of active Republican voters. *Id.* ¶ 14.

---

[2] For purposes of resolving the motion to dismiss, the Court may take judicial notice of the number of currently enrolled New York State Republican Party voters, which is a publicly available figure, the accuracy of which can be "readily determined from sources whose accuracy cannot reasonably be questioned." *See La Vigne v. Costco Wholesale Corp.*, 284 F. Supp. 3d 496, 504 (S.D.N.Y. 2018), *aff'd,* 772 F. App'x 4 (2d Cir. 2019). *See also id.* ("Matters suitable for judicial notice include matters of public record."); *Adams v. Louis*, No. 15-CIV-2575 (AMD) (RLM), 2016 WL 816789, at *2 (E.D.N.Y. Feb. 29, 2016) ("On a motion to dismiss, a court may consider, in addition to the allegations contained in the complaint, matters of which judicial notice may be taken under Federal Rule of Evidence 201.").

The timing for the circulating and filing of designating petitions for the primary election is governed by N.Y. Election Law § 6-134 and § 6-158. Candidates may begin collecting signatures thirty-seven days before the last day to file designating petitions for the primary election. N.Y. Elec. Law § 6-134(4). Candidates for statewide office must file their designating petitions with NYSBOE no earlier than the thirteenth Monday before the primary election, and no later than the twelfth Thursday preceding the primary election. N.Y. Elec. Law § 6-158(1).

Following the filing of a designating petition, any voter eligible to vote for the position in question may file objections to the petition. N.Y. Elec. Law § 6-154(2). A general notice of objections regarding a designating petition for a statewide office must be filed with NYSBOE within three days after the filing of the designating petition. *Id.* The objecting party must then, within six days, file specifications detailing the specific basis for the objections. *Id.* The objecting party must also serve the specifications of objections on the candidate whose petition is under consideration. *Id.* § 6-154(3)(b). NYSBOE bipartisan staff review the objections and hold a hearing at which the candidate or their agent may be present and are provided an opportunity to be heard. *Id.* § 6-154(4). Following the hearing, NYSBOE's commissioners hold a meeting to make final determinations on objections. *Id.* § 6-154(4)(b). Once NYSBOE determines whether a petition is sufficient or insufficient, it must give notice of the determination forthwith to the candidate and the objector. N.Y. Elec. Law § 6-154(5).

If the candidate is dissatisfied with the NYSBOE's determination regarding her petition, she may seek judicial review in New York State Supreme Court pursuant to Article 16 of the Election Law. Proceedings challenging board determinations as to the validity of designating petitions must be instituted within the latter of fourteen days after the last day to file the petition, or within three business days after the board makes a determination that the petition is invalid. N.Y. Elec. Law § 16-102(2). Under Article 16, the Supreme Court "is vested with jurisdiction to summarily determine any question of law or fact arising as to any subject set forth in this article, which shall be construed liberally." N.Y.

Elec. Law § 16-100. The petitioner in an Article 16 petition may seek judicial review of the constitutionality of an election law provision, in addition to raising specific issues regarding the contents of the petition. *See, e.g.*, *Zobel v. New York State Bd. of Elections*, 254 A.D.2d 520 (3d Dep't 1998) (in Article 16 matter, court considered and rejected a constitutional challenge to the "town or city" provision). Orders and judgments of the New York State Supreme Court in proceedings brought pursuant to Article 16 of the Election Law may be appealed to the Supreme Court, Appellate Division, and ultimately to the New York Court of Appeals. *See* N.Y. C.P.L.R. §§ 5701, *et seq.*

When a candidate is uncontested at a party primary, the candidate is "deemed nominated" and becomes the party's candidate on the general election ballot, or in the case of a contender for a party position, is deemed elected thereto. N.Y. Elec. Law § 6-160(2). A primary is contested and proceeds to election when either: (i) more than one candidate for statewide office qualifies for the primary ballot or (ii) an "opportunity to ballot" petition is filed requesting the right to make a write-in when only one candidate has qualified to appear on the ballot. N.Y. Elec. Law § 6-166.

Pursuant to N.Y. Elec. Law § 4-110, the deadline for NYSBOE to certify this year's primary ballot is May 1, 2024. The federal Uniformed And Overseas Citizens Absentee Voting Act requires mailing of military ballots no later than 45 days before the election. 52 U.S.C.A. § 20302(a)(8). Ballots for this primary election must therefore be printed and mailed no later than May 11, 2024.

### B. Plaintiffs' Allegations

In this lawsuit, Ms. Castronuova alleges that she is a candidate seeking to access the ballot for the 2024 primary election for the Republican nomination for the office of United States Senator. Complaint ¶¶ 44-45. Plaintiff John Tabacco alleges that he is a registered voter enrolled in the Republican Party, who would vote for Ms. Castronuova if she were on the ballot. *Id.* ¶ 81. Plaintiffs allege that Ms. Castronuova first sought to become the New York State Republican Party's designated candidate for that office at the Party's February 22, 2024 convention, pursuant to N.Y. Elec. Law § 6-

104. *Id.* ¶ 49. Ms. Castronuova "appeared at the convention and was seconded by a delegate from Yates County." *Id.* ¶ 50. During the convention, Ms. Castronuova "was permitted to speak on the floor to advocate for her candidacy, she was included in the roll call, and County's [sic] were permitted to vote for her as their choice to be the nominee for the Republican party." *Id.* Despite competing to become the Party's designated candidate, Ms. Castronuova did not receive a majority of the votes cast at the convention, nor did she receive 25 percent or more of votes cast. Ms. Castronuova alleges that she received "over 8%" of the votes cast. *Id.* ¶ 54.

Having failed to obtain a place on the ballot through either the majority vote or 25% provisions of N.Y. Elec. Law § 6-104, Ms. Castronuova next began the process of collecting signatures for a designating petition pursuant to N.Y. Elec. Law § 6-136. *Id.* ¶ 57. Plaintiffs allege that, as of the date of her Complaint, Ms. Castronuova had collected "over 13,500 signatures from all over the state[.]" *Id.* ¶ 76.

Plaintiffs allege that the designating petition process is too burdensome, such that it is "practically impossible" for a candidate for statewide office to successfully compile a designating petition that satisfies the requirements of N.Y. Elec. Law § 6-136. *Id.* ¶ 60. Plaintiffs further allege that "[n]o one has successfully accessed the ballot by way of gathering signatures since at least 1996." *Id.* ¶ 104. Citing cases from 1996 and 2000, Plaintiffs allege that the Second Circuit and this Court have previously found the N.Y. Elec. Law § 6-136 designating petition process to be unconstitutional. *Id.* ¶ 1.

The Complaint asserts three causes of action. First, Plaintiffs allege that N.Y. Elec. Law § 6-136 violates the First and Fourteenth Amendments to the United States Constitution by allegedly imposing an undue burden on the right to vote. *Id.* ¶¶ 112-116. Second, Plaintiffs allege that the designating petition process violates their Fourteenth Amendment procedural due process rights. *Id.* ¶¶ 117-123. Third, Plaintiffs allege that the designating petition process violates the Equal Protection

Clause of the Fourteenth Amendment. *Id.* ¶¶ 124-131. Plaintiffs ask the Court to issue an injunction ordering that Ms. Castronuova's name appear on the primary election ballot, among other relief. *Id.* at pps. 24-25.

### C. Plaintiffs' Motion for a Preliminary Injunction

On April 1, 2024, Plaintiffs filed a proposed Order to Show Cause seeking a preliminary injunction. (ECF Nos. 3, 5). On April 5, 2024, Plaintiffs filed an "Emergency Motion for Ex Parte Temporary Restraining Order and Motion for Assignment to Article III Judge and Motion for Statement of Reasons for Grounds of Recusal," which requested emergency interim relief. (ECF No. 16). Plaintiffs' preliminary injunction filings largely repeat the allegations and content of their Complaint.

Following a hearing held on April 10, 2024, the Court denied Plaintiffs' motion for a temporary restraining order and instructed the parties to submit further briefing on Plaintiffs' motion for a preliminary injunction and Defendants' proposed motions to dismiss. (ECF No. 17).

### D. Plaintiff Castronuova's Designating Petition

On April 4, 2024, Ms. Castronuova filed a timely N.Y. Elec. Law § 6-136 designating petition with NYSBOE. Zebrowski Stavisky Decl. ¶ 19. NYSBOE's preliminary count is that Ms. Castronuova's petition contains 15,729 signatures. *Id.*

On April 9, 2024, NYSBOE received a general objection to Ms. Castronuova's petition that was timely postmarked by April 8, 2024. *Id.* On April 15, 2024, the objecting party filed timely specifications of objections with NYSBOE. *Id.* The objecting party must also serve the objections on Ms. Castronuova's campaign. NYSBOE will address the objections pursuant to the statutory process described in Part A, *supra*. If Ms. Castronuova is dissatisfied with the outcome of that process, she may seek judicial review in New York Supreme Court.

E.  **Recent History of Candidates Obtaining Primary Ballot Access by Filing Designating Petitions for Statewide Office**

In 2022, seven candidates qualified for the primary ballot for statewide offices in New York by submitting a designating petition signed by at least 15,000 voters that satisfied the requirements of N.Y. Elec. Law § 6-136: Rob Astorino, Andrew Giuliani, Thomas Suozzi, Jumaane Williams, and Harry Wilson for the office of Governor; and Ana Maria Archila and Diana Reyna for the office of Lieutenant Governor. Zebrowski Stavisky Decl. ¶ 15. Astorino, Giuliani, and Wilson all ran in the Republican primary. *Id.*.[3]

In 2018, five candidates so qualified: Leecia Eve, Sean Patrick Maloney, and Zephyr Teachout for the office of Attorney General; Cynthia Nixon for the office of Governor; and Jumaane Williams for the office of Lieutenant Governor. *Id.*

**STANDARD OF REVIEW**

A.  **Motion for a Preliminary Injunction**

"Preliminary injunctive relief . . . is an 'extraordinary and drastic remedy' that is 'unavailable except in extraordinary circumstances.'" *Murray v. Cuomo*, No. 1:20-CV-03571-MKV, 2020 WL 2521449, at *8 (S.D.N.Y. May 18, 2020) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005)). Where "a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016) (quoting *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011)).

---

[3] These basic facts regarding candidates who have appeared on the ballot in recent statewide primary elections may be ascertained from publicly available records, the accuracy of which can be readily determined from sources whose accuracy cannot reasonably be questioned. *See* Zebrowski Stavinsky Decl. ¶ 15; NYSBOE Election Certifications, *available at* https://elections.ny.gov/election-certifications. The Court may therefore take judicial notice of this information on a motion to dismiss. *See supra* at 3 n.2.

Where a plaintiff "seeks a mandatory injunction against the government that would change the status quo existing when the case was filed," a heightened standard applies in which the plaintiff "must show 'a 'clear' or 'substantial' likelihood of success on the merits." *Murray*, 2020 WL 2521449, at \*8 (quoting *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012)).

### B. Motion to Dismiss

When a defendant moves to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys.*, 426 F.3d 635, 638 (2d Cir. 2005). The district court must "'constru[e] all ambiguities and draw[] all inferences' in a plaintiff's favor," and then "may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" *Id.* (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed "if there are no legal grounds upon which relief may be granted." *Virgilio v. City of N.Y.*, 407 F.3d 105, 111 (2d Cir. 2005). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## ARGUMENT

### I.    PLAINTIFFS' CLAIMS AGAINST NYSBOE MUST BE DISMISSED ON ELEVENTH AMENDMENT SOVEREIGN IMMUNITY GROUNDS

As a threshold matter, the motion for preliminary injunction against NYSBOE must be denied, and all claims against NYSBOE must be dismissed, because NYSBOE has sovereign immunity from claims in federal court under the Eleventh Amendment. The Eleventh Amendment

provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. "Although the Eleventh Amendment does not explicitly bar suits against a state by its own citizens, it is well established that a non-consenting state is immune from suits brought by its own citizens in federal court." *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 328 (E.D.N.Y. 2014) (citing *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004)). Sovereign immunity "extends not only to the state itself, but also to entities considered 'arms of the state,'" and "applies regardless of the nature of the relief sought." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

Sovereign immunity bars "direct constitutional claim[s] brought directly against a state entity . . . ." *Id.* at 329 (citing *Santiago v. New York State Dept. of Corr. Services*, 945 F.2d 25, 30-32 (2d Cir. 1991)). *See also Garcia v. Paylock*, No. 13-cv-2868 (KAM), 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity or had that immunity abrogated pursuant to that constitutional amendment."). Likewise, "Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the 11th Amendment." *Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011). *See also Holmes v. Caliber Home Loans, Inc.*, No. 16-CV-3344 (KMK), 2017 WL 3267766, at *5 (S.D.N.Y. July 31, 2017) (same); *Moore v. Desposito*, No. 15-cv-4319 (CBA) (LB), 2016 WL 4223967, at *3 (E.D.N.Y. Apr. 19, 2016) ("Congress did not abrogate the states' sovereign immunity" in sections 1983, 1985, 1986, or 1988).

NYSBOE "is a state agency for the purposes of the Eleventh Amendment . . . ." *Credico v. New York State Bd. of Elections*, 751 F. Supp. 2d 417, 420 (E.D.N.Y. 2010). *See also Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 696 (S.D.N.Y. 2018) ("because New York has not waived its immunity or consented to being sued under the Constitution or 42 U.S.C. §§ 1985 or 1986, Plaintiff's

claims against the State Board are dismissed with prejudice"); *Iwachiw v. NYC Bd. of Elections*, 217 F. Supp. 2d 374, 379 (E.D.N.Y. 2002) (dismissing § 1983 claims against the State Board on the basis of sovereign immunity), *aff'd, Iwachiw v. New York City Bd. of Elections*, 126 F. App'x 27 (2d Cir. 2005).

New York has not waived its immunity or consented to being sued under the United States Constitution or 42 U.S.C. §§ 1985 or 1986.[4] Plaintiffs' claims must therefore be dismissed as to NYSBOE for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II.   PLAINTIFFS HAVE NOT ESTABLISHED A CLEAR LIKELIHOOD OF SUCCESS AND THEIR COMPLAINT FAILS TO STATE A CLAIM

Plaintiffs' motion for a preliminary injunction should be denied because Plaintiffs have not established a clear likelihood of success on the merits as to any of their three causes of action. Their Complaint fails to state a claim for the same reasons and should be dismissed pursuant to Rule 12.

### A.   Plaintiffs Have Not Stated a Claim for Undue Burden on the Right to Vote

#### i.   *Anderson-Burdick Framework*

When considering whether a state election law imposes an unconstitutional burden on voting rights, courts apply an analysis derived from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under this framework, the court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Id.* at 434 (quoting *Anderson*, 460 U.S. at 789). Where a state election law subjects voters' First and Fourteenth Amendment rights to "'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* (quoting *Norman v. Reed,* 502 U.S. 279, 289, 112 S.Ct. 698, 705, 116 L.Ed.2d 711 (1992)). But when an election

---

[4] Relatedly, a state agency is not a "person" for purposes of 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

law provision "imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Id.* (quoting *Anderson*, 460 U.S. at 788). Judicial review of reasonable, nondiscriminatory restrictions is "quite deferential, and [courts] will not require 'elaborate, empirical verification of the weightiness of the State's asserted justifications.'" *Price v. New York State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997)). The "general rule" is that "evenhanded restrictions that protect the integrity and reliability of the electoral process itself are not invidious . . . ." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 189–90 (2008) (internal citation and quotation omitted).

*ii.*     *Prestia and the Five Percent Threshold for Ballot Access Petitions*

Plaintiffs attempt to mount a facial challenge to the designating petition signature requirement in N.Y. Elec. Law § 6-136, alleging that the process set forth therein is unconstitutionally burdensome. But Plaintiffs omit an entire body of Second Circuit case law that, applying the *Anderson-Burdick* framework, squarely rejects their position.

In *Prestia v. O'Connor*, 178 F.3d 86 (2d Cir. 1999), the Second Circuit addressed a challenge to a parallel provision of § 6-136 regarding the signature requirement for petitions for access to congressional primary ballots. The Second Circuit held that "States have an important interest in 'requiring some preliminary showing of a significant modicum of support' before printing a candidate's name on the ballot, so as to 'avoid[ ] confusion, deception, and even frustration of the democratic process at the general election.'" *Id.* at 88 (quoting *Jenness v. Fortson,* 403 U.S. 431, 442 (1971)). The Second Circuit determined that "a requirement that ballot access petitions be <u>signed by at least 5% of the relevant voter pool is generally valid</u>, despite any burden on voter choice that results when such a petition is unable to meet the requirement." *Id.* (emphasis added).

12

Following *Prestia*, courts in this Circuit have consistently rejected challenges to the signature collection requirements of N.Y. Elec. Law § 6-136 and parallel statutory provisions. In *McMillan v. New York Bd. of Election*, 234 F.3d 1262 (2d Cir. 2000) (unpublished summary order), the New York Supreme Court invalidated a petition of a candidate seeking the Democratic Party nomination for United States Senate because he failed to collect 15,000 signatures. The plaintiff filed a lawsuit in the Eastern District of New York challenging the constitutionality of Section 6-136 and requesting an injunction placing his name on the primary ballot. Judge Nickerson dismissed the complaint as frivolous, and on appeal the Second Circuit issued an unpublished summary order affirming the district court's judgment. The Second Circuit stated that it found "no merit in [the plaintiff's] appeal. This Court has upheld the signature requirements of New York Election Law § 6-136 as part of a ballot access scheme that is reasonably tailored to meet the state's legitimate interest in assuring that candidates have a reasonable modicum of support, and in preventing fraud and voter confusion." *Id.* at 1262. Quoting *Prestia*, the panel reaffirmed "'the general rule that a ballot access requirement of signatures from five percent of the relevant voter group ordinarily does not violate constitutional rights.'" *Id.* (quoting *Prestia*, 178 F.3d at 87).

In *Ulrich v. Mane*, 383 F. Supp. 2d 405 (E.D.N.Y. 2005), a candidate seeking placement of his name on the primary election ballot for nomination as Republican candidate for New York City mayor filed suit challenging Section 6-136. In that case, the petition requirement that applied to candidates for citywide office in New York City was 7,500 signatures. Judge Garaufis denied the plaintiff's motion for a preliminary injunction and dismissed the Complaint. *Id.* at 408. Citing *Prestia*, Judge Garaufis found that because "the Second Circuit squarely has held that petition signature requirements more onerous than those faced by [plaintiff] are not severe within the meaning of the First Amendment, I am constrained to find that the 7,500 signature requirement imposed by New York law likewise is not a severe burden, and thus one that candidates for citywide office may be forced to bear in order to

achieve a place on the ballot." *Id.* at 407-08. Judge Garaufis applied *Prestia*'s five percent metric: because the 7,500 signature requirement amounted to only 1.57% of enrolled Republican party voters in New York City, it passed the *Prestia* test. *Id.* at 411.

Other cases have repeatedly reached the same outcome. *See, e.g.*, *SAM Party of New York v. Kosinski*, 576 F. Supp. 3d 151, 163 (S.D.N.Y. 2021), *aff'd sub nom. Libertarian Party of New York v. New York State Bd. of Elections*, No. 22-44-CV, 2022 WL 10763416 (2d Cir. Oct. 19, 2022) (rejecting challenge to comparable independent nominating petition provision of New York Election Law); *Libertarian Party of New York v. New York Bd. of Elections*, 539 F. Supp. 3d 310, 328 (S.D.N.Y. 2021) (again rejecting challenge to independent nominating petition provision and finding that "valid interests—ensuring a sufficient modicum of public support, reducing voter confusion and ballot overcrowding, and protecting against the public financing of frivolous candidates—support the policy decisions made by the New York State Legislature"); *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 697 (S.D.N.Y. 2018) (citing *Prestia* and dismissing complaint brought by mayoral candidate challenging signature requirement).

Here, Plaintiffs' challenge to N.Y. Elec. Law § 6-136 fails as a matter of law because the statute sets an upper limit on the signature requirement for designating petitions at five percent of the total number of enrolled voters of the party in the state. N.Y. Elec. Law § 6-136(1). The statute therefore cannot exceed *Prestia*'s presumptively constitutional threshold. In practice, the burden on candidates is considerably lower than the *Prestia* threshold because the statute permits candidates for statewide office to gain a place on the ballot by collecting only 15,000 signatures. *Id.* (requiring "the *lesser* of 15,000 voters, or five percent of the total number of enrolled voters of the party in the state") (emphasis added). With current New York State Republican Party enrollment at 2,695,185 active voters, 15,000 amounts to a mere **0.556%** of active Republican voters in New York State. Zebrowski Stavisky Decl. ¶ 14.

14

iii.     *Reasonably Diligent Candidates Can Satisfy The Designating Petition Requirement*

The Second Circuit has further noted that "[t]he hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (internal citation omitted). "What is ultimately important is not the absolute or relative number of signatures required but whether a reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot." *Id.* at 177-78.

Here, Plaintiffs allege that it is "practically impossible" for a candidate for statewide office to successfully compile a designating petition that satisfies the requirements of N.Y. Elec. Law § 6-136. *Id.* ¶ 60. Plaintiffs further allege that "[n]o one has successfully accessed the ballot by way of gathering signatures since at least 1996." *Id.* ¶ 104. The fact that this claim is not true may be confirmed by reference to publicly available records regarding candidates who have appeared on the ballot in recent statewide primary elections. Zebrowski Stavisky Decl. ¶ 15; NYSBOE Election Certifications, *available at* https://elections.ny.gov/election-certifications. The Court may take judicial notice of this information on a motion to dismiss. *See supra* at 3 n.2. In 2022, seven candidates, including three Republicans, who were not their party's designated candidate for the nomination, qualified for the primary ballot for statewide offices in New York by submitting a petition signed by at least 15,000 voters. Zebrowski Stavisky Decl. ¶ 15. In 2018, five candidates so qualified. *Id.*

Subjective claims of undue burden or claimed impossibility are particularly insufficient, and the United States Supreme Court has stated that it is "unimpressed" with arguments by candidates that it is too hard to comply with similar signature requirements, noting that "[h]ard work and sacrifice by dedicated volunteers are the lifeblood of any political organization." *Am. Party of Texas v. White*, 415 U.S. 767, 787 (1974).

iv.       *The Cases Cited by Plaintiffs are Distinguishable*

Plaintiffs principally rely on two cases, *Rockefeller v. Powers*, 78 F.3d 44 (2d Cir. 1996) and *Molinari v. Powers*, 82 F. Supp. 2d 57 (E.D.N.Y. 2000), which they suggest invalidated the designating petition requirements in Section 6-136. Plaintiffs are mistaken. *Rockefeller* and *Molinari* did not address challenges to N.Y. Elec. Law § 6-136, but rather addressed the process of accessing the presidential primary ballot. At the time of these cases, that process had unique features which, in combination, were found to have created an undue burden.

As to *Rockefeller*, the Second Circuit itself subsequently explained in *Prestia* that "the holding in [*Rockefeller v.*] *Powers* is attributable to—and, therefore, limited to—[] special circumstances surrounding the presidential primary process . . . ." *Prestia*, 178 F.3d 89. The special circumstances included a rule that, in practice, required campaigns to collect signatures in *every* congressional district in the State. This rule "required candidates to confront—and therefore allocate their resources among—all 31 New York districts, not to mention the other states," meaning that "even the most viable and well-financed candidates, unless supported by the Republican State Committee, did not have the resources to mount a successful petition drive in every New York district, and some nationally prominent Republican candidates chose to forgo competing in New York at all." *Id.* By contrast, the geographic requirement of § 6-136 only requires a campaign to gather 100 signatures from each of half of New York's 26 congressional districts, which is a far less burdensome and reasonable requirement for a candidate seeking statewide office.

In addition, as *Prestia* explained, another unique circumstance of the presidential primary process at that time was that "the New York Legislature had given each political party the option of choosing—for the purposes of the 1996 presidential primaries—between a 5%/1250 signature requirement and a 0.5%/1000 signature requirement." *Id.* "It was therefore apparent that although the Republican party leadership had an interest in a 5% rule, the state's interest in requiring 'a modicum

of support' before granting ballot access could be met by the lesser requirement." *Id.* There is no option for a party to make such a selection under Section 6-136.

As to *Molinari*, the defendants in that case stipulated that the ballot access provisions that applied to the presidential primary at that time imposed an undue burden. 82 F. Supp. 2d at 71. Judge Korman then issued an opinion detailing his "agreement with the stipulation of the parties that the overall ballot access scheme poses an undue burden[.]" *Id.* The court noted several factors that led him to that conclusion. As in *Rockefeller*, the practical requirement that presidential campaigns were forced to obtain signatures from "every one of New York's congressional districts," 82 F. Supp. 2d at 59, was again a critically important factor in the court's assessment of burden. When discussing that burden, Judge Korman expressly contrasted the provisions of Section 6-136 that apply to Ms. Castronuova's campaign as representing a *less burdensome* scheme than the one that applied to presidential candidates. *See id.* at 60 ("By contrast, in order to qualify to run in the Republican primary for Governor of the State of New York [or other statewide office], a gubernatorial candidate [or other candidate for statewide office] *need only obtain 15,000 signatures*. While some showing of support is required throughout the state, it suffices if the gubernatorial candidate obtains 100 signatures from each of only one-half of the congressional districts.") (emphasis added).

Judge Korman also found unduly burdensome a then-existing provision that "each witness to a designating petition must either be a registered Republican voter residing in the congressional district of the delegate candidate for whom he or she is witnessing signatures, or, in the alternative, must be a notary public or commissioner of deeds." *Id.* at 71. By contrast, N.Y. Elec. Law § 6-132 now requires only that a witness be "a duly qualified voter of the state, who is an enrolled voter of the same political party as the voters qualified to sign the petition and who has not previously signed a petition for another candidate for the same office."

Finally, Judge Korman found that N.Y. Elec. Law § 6-132 "as applied" was unduly burdensome because it required petition signers to write their "Town or City." The court was concerned that this requirement could be a "trap" for signers who might inadvertently list a village or hamlet instead of municipality, thus invalidating their signature. *Id.* at 71-72. Under current law, N.Y. Elec. Law § 6-130 continues to require that a designating petition set forth "the name of the signer, his or her residence address, town or city (except in the city of New York, the county), and the date when the signature is affixed." This statute does not, on its own, create an undue burden. Outside of the context of *Molinari*, which involved a confluence of then-existing factors in the presidential primary, and in which the parties entered into a stipulation accepting a finding of undue burden, New York courts have repeatedly held that the town or city requirement serves an important purpose and does not impose an unconstitutional burden. In *Stoppenbach v. Sweeney*, 98 N.Y.2d 431 (2002), the New York Court of Appeals held that "compliance with [Section 6-130's town or city provision] is required, as it constitutes a matter of substance and not of form." *Id.* at 433. The *Stoppenbach* court specifically found that *Molinari* was "distinguishable," in part because the parties had stipulated to a finding of undue burden. *Id.*[5] In *Zobel v. New York State Bd. of Elections*, 254 A.D.2d 520 (3d Dep't 1998), the Appellate Division, Third Department rejected a constitutional challenge to the town or city requirement of N.Y. Elec. Law § 6-140, which mirrors the one in Section 6-130. The Third Department determined that "[s]trict compliance with the town or city requirement . . . serves the legitimate purpose of facilitating the discovery of fraud and allows the rapid and efficient verification of signatures within the restrictive time periods imposed by the Election Law." *Id.* at 522 (internal citations omitted). The court further held that, "contrary to the candidates' contentions, the

---

[5] The Court of Appeals's analysis of *Molinari* in *Stoppenbach* was truncated because, while the parties had raised *Molinari* on appeal, they had not "raised similar constitutional issues before the trial court nor sought to develop record evidence in support of constitutional violations, and we, therefore, have no basis for passing on constitutional issues." *Id.* at 433.

reasonable, nondiscriminatory requirement imposed by [the town or city statute] does not restrict access to the State ballot or place an unconstitutional burden on the candidates' 1st and 14th Amendment rights to associate." *Id. See also Stark v. Kelleher*, 32 A.D.3d 663, 665 (3d Dep't 2006) (finding "no merit to petitioner's assertion that the town and city requirement violates the US Constitution"); *Tischler v. Hikind*, 98 A.D.3d 926, 927 (2d Dep't 2012) ("the failure to accurately identify a signer's town or city, or county in the City of New York, will invalidate the signature involved").[6]

> v.     None of the Other Grievances Plaintiffs Allege Create an Undue Burden

Plaintiffs allege an assortment of other grievances about the designating petition process, none of which, alone or in combination, creates an undue burden.

Plaintiffs claim that NYSBOE "does not provide detailed or satisfactory instructions on how to file [designating] petitions[.]" *Id.* ¶ 15. This is not accurate. The Election Law itself contain extremely detailed instructions for filing designating petitions, and NYSBOE posts publicly available guidance and information for candidates. *See* https://elections.ny.gov/petition-information. Campaigns also can and do routinely contact NYSBOE staff to ask questions and seek guidance on procedural requirements for petitions and all manner of other issues. Zebrowski Stavisky Decl. ¶ 25.

Plaintiffs argue that it is unfair that "Republicans and Democrats have the same requirements even though registered Democrats outnumber registered Republicans by 2 to 1." *Id.* ¶ 18. Judge Garaufis rejected this same argument in *Ulrich*. There, the plaintiff was as Republican candidate seeking a place on the primary ballot for mayor in New York City. He complained that N.Y. Elec. Law § 6-

---

[6] The Zebrowski Stavisky Declaration, which the Court may consider in evaluating Plaintiffs' motion for a preliminary injunction, adds further context regarding the importance of the town or city requirement in facilitating the efficient verification of petition signatures. *See* Zebrowski Stavisky Decl. ¶¶ 20-24. Moreover, it is not unduly burdensome for campaigns to comply with this rule. Voters do know the town or city in which they live. *Id.* ¶ 24. But even if the signer inadvertently lists a village, the law permits the witness to correct that line of the petition, even after the voter has left. *Id.*; N.Y. Elec. Law § 6-134(6). It appears that Ms. Castronuova's campaign is well aware of the town or city requirement, as Plaintiffs discuss it at length in their papers.

136 "requires both Republican and Democratic candidates to collect the same number of signatures to qualify for the ballot even though Democrats outnumber Republicans in New York City by more than 5–to–1[.]" 383 F. Supp. 2d at 411. Judge Garaufis found that this numerical disparity did not create an undue burden because the signature requirement for Republican and Democratic candidates were both far below the *Prestia* five percent threshold. *Id.*

Plaintiffs complain that, due to expected objections to a designating petition, candidates allegedly "must collect at least double the signatures required" in order to survive the objections process and secure a place on the ballot. Compl. ¶ 71. This argument, too, was considered and rejected by Judge Garaufis in *Ulrich*. Judge Garaufis found that because even the plaintiff's higher estimate of the "true number of signatures that a prospective candidate needs to obtain in order to survive a post-petition legal challenge" was itself below the five percent threshold, this estimate could not support a finding of undue burden. 383 F. Supp. 2d at 411. Likewise here, even accepting Plaintiffs' estimated higher target of 30,000 signatures, that would still amount to only 1.1 percent of active Republican voters in New York State.

Plaintiffs complain that the time period for circulating petitions included several holidays and days with inclement weather. Compl. ¶ 14. But there is no 37-day period in the calendar that will not include some holidays and days with inclement weather. The length of the time period, which has been in effect since at least 1992, Zebrowski Stavisky Decl. ¶ 10, also represents a considered balance between affording candidates a reasonable period to collect signatures and the many other deadlines and requirements of the election calendar. This grievance does not amount to an undue burden.

### B.  Plaintiffs Have Not Stated a Due Process Claim

The Complaint alleges that Plaintiffs' procedural due process rights could potentially be violated during the upcoming designating petition objection process because there is allegedly "no law requiring that Plaintiffs be given notice if their petitions are challenged." Compl. ¶ 120. Even if ripe,

this claim is easily resolved because Plaintiffs are wrong about the statute. Pursuant to N.Y. Elec. Law § 6-154(2), a voter who objects to a designating petition for a statewide office must file with NYSBOE specifications detailing the specific basis for the objections. Pursuant to the statute, the objecting party must serve the specifications of objections on the candidate whose petition is under consideration. *Id.* § 6-154(3)(b). If the objecting party fails to serve the candidate with the specifications of objections, NYSBOE may not consider the objections. *Id.* NYSBOE bipartisan staff review the objections and hold a hearing at which the candidate or their agent may be present and are provided an opportunity to be heard, followed by a meeting of the NYSBOE commissioners at which determinations will be rendered. *Id.* § 6-154(4). Once NYSBOE determines whether a petition is sufficient or insufficient, it will give notice of the determination forthwith to the candidate and the objector. *Id.* § 6-154(5). If the candidate is dissatisfied with NYSBOE's determination regarding her petition, she may seek judicial review of such determinations in New York State Supreme Court, pursuant to Article 16 of the Election Law. In short, Ms. Castronuova will receive ample notice and opportunity to be heard throughout the objections process. There is no basis for a due process claim. *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 466–67 (2d Cir. 2006) (upholding dismissal of due process claim by candidate who had notice and an opportunity to be heard at a City Board of Elections hearing, as well as the opportunity to obtain full judicial review under N.Y. Election Law Article 16).

### C.  Plaintiffs Have Not Stated an Equal Protection Claim

Plaintiffs have likewise failed to state an Equal Protection claim. The Equal Protection Clause prohibits the government from denying "any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Second Circuit has held that "a § 1983 action to remedy errors in the election process allegedly violating the equal protection clause does not exist unless the state action constituted intentional or purposeful discrimination." *Gold v. Feinberg,* 101 F.3d

21

796, 800 (2d Cir. 1996) (internal citation omitted). "Thus, to state an equal protection claim" in the context of an election lawsuit, a plaintiff "must allege that the [] Board [of Elections] intentionally discriminated against him, 'either by adopting out of [discriminatory] animus policies which are facially neutral but have a . . . discriminatory effect, or by applying a facially neutral policy in a . . . discriminatory manner.'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 199–200 (E.D.N.Y. 2013) (quoting *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 470 (2d Cir. 2006)). "'To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.'" *Id.* (quoting *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 193 (2d Cir.1994)). "Conclusory allegations of intentional discrimination, 'without evidentiary support or allegations of particularized incidents, do[ ] not state a valid claim and so cannot withstand a motion to dismiss.'" *Id.* (quoting *Rivera–Powell,* 470 F.3d at 470).

Here, Plaintiffs allege that "favored candidates" do not need to submit designating petitions to gain a place on the ballot. Complaint ¶ 130. This is merely a reference to the fact that N.Y. Election Law offers multiple paths for a candidate to gain a place on the ballot in a primary election. Ms. Castronuova, like all other candidates for United States Senate in her party, had the opportunity pursuant to N.Y. Elec. Law § 6-104 to vie to become her party's designated candidate by vote of the party's state committee. Ms. Castronuova concedes that she competed for this vote at the party convention, and that a different candidate received the majority. Compl. ¶¶ 49-57. Pursuant to N.Y. Elec. Law § 6-104(2), Ms. Castronuova also could have obtained a place on the ballot by receiving 25% or more of the state committee vote, but Ms. Castronuova failed to reach that threshold. Compl. ¶ 54. Although she was not successful at the party convention, N.Y. Election Law nevertheless offered Ms. Castronuova a third path to secure a place on the ballot, through the designating petition process.

Ms. Castronuova fails to allege any facts suggesting that she has been subjected to intentional or purposeful discrimination. Nor has she been treated differently than similarly situated persons, as

she is not similarly situated to the candidate who won a majority of the state committee vote. Her Equal Protection claim must fail. *See Tiraco*, 963 F. Supp. 2d at 200 (E.D.N.Y. 2013) ("Conspicuously absent from the Second Amended Complaint are any nonconclusory allegations that Plaintiff was a member of a protected class, that the City Board intentionally discriminated against him based on his membership in any protected class, or that the unnamed 'favored' candidates who received the items he requested were similarly situated to Plaintiff in all relevant respects. Plaintiff's allegations are therefore inadequate to sustain a plausible equal protection claim.").

### D.  Plaintiffs Have Not Stated a Claim Under the Seventeenth Amendment

The Complaint does not contain a cause of action under the Seventeenth Amendment, but the Complaint at one point briefly alleges that the designating petition process purportedly "subvert[s] the Seventeenth Amendment by taking the power to choose their candidates from the People and delivering it to the Party leadership." Compl. ¶ 39. There is no merit to this argument. Plaintiffs cite no cases in which a designating petition process has been found to violate the Seventeenth Amendment. On the contrary, case law in the Second Circuit and elsewhere have repeatedly upheld the designating petition process as a legitimate means of ensuring that a candidate has a significant modicum of support before being placed on the ballot. *See supra* at Part II.A.ii.

### III.   PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM OR THAT THE PUBLIC INTEREST WEIGHS IN THEIR FAVOR

The Court should deny Plaintiffs' motion for a preliminary injunction for the additional reasons that they have failed to demonstrate the second and third preliminary injunction factors.

### A.  No Irreparable Harm

The Second Circuit has held that "[t]he presence of irreparable injury to First Amendment rights . . . turns on whether the plaintiff has shown a clear likelihood of success on the merits[.]" *SAM Party of New York v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021). Where "plaintiffs have failed to demonstrate a likelihood of success on the merits, they have similarly failed to demonstrate they would

be irreparably harmed without a preliminary injunction." *Libertarian Party of New York v. New York Bd. of Elections*, 539 F. Supp. 3d 310, 329–30 (S.D.N.Y. 2021). Here, Plaintiffs have not demonstrated a likelihood of success on the merits, and their claim for irreparable harm fails as well.

### B.  The Public Interest Does Not Weigh in Favor of a Preliminary Injunction

"[A] plaintiff seeking a preliminary injunction must demonstrate not just that they have some likelihood of success on the merits and will suffer irreparable harm absent an injunction, but also that the 'the balance of equities tips in his favor[ ] and . . . an injunction is in the public interest.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 112 n.4 (2d Cir. 2014) (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). In election cases in particular, "where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief . . . ." *Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

Here, the balance of equities and public interest weigh decidedly against the preliminary injunction requested by Plaintiffs. Ms. Castronuova has had every opportunity to pursue the multiple avenues available to her to be placed on the primary ballot. She has submitted a designating petition that preliminarily appears to contain more than 15,000 signatures, and the review and objection process set forth in New York Election Law will play out in an orderly fashion over the next few weeks. If Ms. Castronuova is dissatisfied with the result of that process, she may seek judicial review in New York Supreme Court. Plaintiffs ask this Court to take the extraordinary step of terminating that process and ordering NYSBOE to list Ms. Castronuova's name on the ballot, whether or not she has demonstrated a significant modicum of support as required by New York Election Law. The relief she requests would not only affect her, but would also have downstream effects on other candidates and races throughout the State, as other candidates who were unsuccessful in the designating petition process would likely demand similar federal judicial intervention. All of this would play out just weeks

or days before ballots are due to be certified, printed, and mailed to voters. The public interest would not be served by such a drastic and last-minute upheaval in the election process. By contrast, the public has a strong interest in permitting NYSBOE to administer the upcoming election in an orderly manner, pursuant to the established rules. The public also maintains a strong interest in ensuring that candidates who appear on the ballot have some substantial modicum of support, in order to avoid voter confusion, maintain an organized ballot, and prevent fraudulent and frivolous candidacies. For all these reasons, the balance of equities and public interest weigh against the preliminary injunction Plaintiffs demand.

## CONCLUSION

For the reasons set forth above, NYSBOE respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction and dismiss the Complaint in full.

Dated:      New York, New York
              April 15, 2024

Respectfully submitted,

LETITIA JAMES
Attorney General
State of New York

By: /s/ Owen T. Conroy
Owen T. Conroy
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6382
Owen.Conroy@ag.ny.gov

*Counsel for Defendant New York State*
*Board of Elections*

25